Roberto S. VASQUEZ et al.

v.

HOUSING AUTHORITY OF the
CITY OF EL PASO.

No. EP–00–CA–089–DB.

United States District Court,
W.D. Texas,
El Paso Division.

July 13, 2000.

928

Fernando Chacon, El Paso, Texas, for plaintiffs.

Michael C. Crowley, Dunbar, Armendariz, Crowley & Hegeman, L.L.P., El Paso, Texas, for defendant.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant the Housing Authority of the City of El Paso's ("HACEP") "Motion to Dismiss and Motion for Summary Judgment" and Plaintiffs Robert S. Vasquez ("Vasquez") and Jesus De La O's ("De La O") (collectively, "Plaintiffs") "Motion for Summary Judgment and Brief in Support," filed on April 13 and 24, 2000, respectively, in the above-captioned cause. On April 24, 2000, Plaintiffs filed their "Response to the Motion to Dismiss." Plaintiffs filed their "Supplemental Brief in Support of Plaintiff's [*sic*] Motion for Summary Judgment and Against Defendant's Motion to Dismiss and Summary Judgment" on May 3, 2000. After due consideration, the Court is of the opinion HACEP's Motion should

be granted and Plaintiffs' Motion denied, for the reasons that follow.

### Facts & Procedural History

HACEP is a housing authority which maintains various government-owned housing complexes for use by eligible low income El Paso, Texas, residents. De La O is a resident of El Paso and a tenant of one of HACEP's complexes, the Sun Plaza Apartments ("Sun Plaza"). At the time this cause was commenced, Vasquez, who does not reside in a HACEP complex, was a candidate for the El Paso County Democratic Chair. Early voting and the election for that office was scheduled for April 3 and 11, 2000, respectively.

On March 28, 2000, in furtherance of his candidacy, Vasquez allegedly requested permission from HACEP to campaign door-to-door and distribute campaign materials to residents living in the Sherman Oaks Housing Projects ("Sherman Oaks"),[1] a complex maintained by HACEP. Vasquez avers that at that time, HACEP representatives denied Vasquez permission to campaign door-to-door and advised him that the Sherman Oaks, like other HACEP properties, is governed by Rules D.2 and D.5 contained in the "Housing Authority of the City of El Paso Community and Resident Rules for Public Housing Program and Section 8 New Construction Program," which limits access by non-residents to HACEP's complexes.[2]

■ Consequently, on March 30, 2000, Plaintiffs filed their Complaint and Motion

---

1. All HACEP complexes are adjacent to city-owned streets and sidewalks. Some HACEP complexes, like the Sherman Oaks, have city-owned streets and sidewalks within them.

2. Rule D.2, which the Parties refer to as the "trespass after warning" rule, provides as follows:

   Trespassing. The development premises are for the exclusive use and enjoyment of the residents, members of their households, their guests and visitors, and such other persons who have legitimate business on the premises, e.g., law enforcement and other governmental personnel, utility service workers, HACEP contractors, and others as authorized by HACEP. All other persons will be regarded as trespassers subject to prosecution as allowed by state or municipal ordinance.

   Any person who desires access to any development premises and any person found on the walks, ways, playgrounds, parking lots, drives and other common areas of the development premises will be required by any law enforcement or HACEP personnel to identify himself or herself and to prove authority to be on the development premises. Any person who refuses to provide personal identification or cannot show authority to be on the development premises will receive a 'trespass warning' ordering the person to leave the development premises or be subject to arrest and prosecution to the extent permitted by state law or municipal ordinance.

   Any person observed by law enforcement or HACEP personnel violating any HACEP rule, or federal, state or municipal law, regulation, or ordinance will be ordered by law enforcement or HACEP personnel to leave the development premises.

   Rule D.5 ("door-to-door solicitation rule"), provides as follows:

   Notices and Flyers. HACEP does not allow door-to-door sales. If a resident desires to distribute notices or flyers in his development, the resident must obtain advance approval of the Development's Housing Manager and provide the Housing Manager with a copy of the proposed notice or flyer. A resident may not distribute a notice or flyer before 9:00 a.m. or after 8:00 p.m. Under no circumstances will a notice or a flyer be left in plain view on a resident's door if a resident of the unit is not at home or declines to answer the door. A resident distributing such flyers or notices must do nothing to allow the flyers or notices to become litter or which would disrupt the peaceful use and enjoyment of the other residents in the development or the residents' use of common areas.

At this point, it also is worthy to note that HACEP has presented uncontradicted summary judgment evidence in the form of affidavit testimony by one Ned Beman, HACEP's Director of Housing Management, which establishes that the purpose of Rules D.2 and D.5 are for the protection and safety of HACEP's tenants, many of which are elderly residents and are frightened by door-to-door solicitors due to the fact that majority of those arrested on HACEP property are non-residents engaged in narcotics distribution. Additionally, Beman's uncontradicted testimony reveals that the United States Immigration and Naturalization Service operates a surveil-

for Temporary Restraining Order, arguing that Rules D.2 and D.5 violate their rights under the "[f]irst, fourth, fifth and fourteenth amendments to the United States Constitution," and "42 U.S.C. §§ 1981, 1982, 1983, 1984, and 1988." In essence, Vasquez argues that HACEP's rules operate as a ban on his First Amendment right to campaign door-to-door on HACEP property and to distribute campaign literature to its residents. De La O maintains that the rules violate his rights to receive such campaign information from candidates such as Vasquez and, in turn, to "express his views to those candidates." Plaintiffs also maintains that Rules D.2 and D.5 are overbroad. Next, Plaintiffs aver that Rules D.2 and D.5 violate their right of equal protection under the law. Finally, De La O argues that HACEP Rule D.1[3] violates his "rights of free speech" and denies him the right "to the fair use of his leasehold." Plaintiffs seek attorney's fees and costs, and a permanent injunction barring the enforcement of the rules at issue.

On March 31, 2000, the Court issued a Temporary Restraining Order in this cause, enjoining HACEP from preventing Vasquez and other candidates for political office from campaigning on HACEP's property until a final hearing was held on the matter.

On April 7, 2000, the Court held a hearing on this cause.

The Parties' instant Motions followed.

### Standard on Motion for Summary Judgment

To the extent that the Court goes beyond the original pleadings in this cause, the Court construes the instant Motions as motions for summary judgment pursuant to Rule 56, because the resulting conversion facilitates disposition of this action. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (2d ed. 1990 & Supp.2000).

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party that moves for summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See,*

---

lance station in at least one of its complexes, the Sun Plaza, because of the large number of undocumented aliens who pass through that complex.

**3.** Rule D.1 provides as follows:

Parking. Residents will park their motor vehicles in parking areas designated by HACEP. Residents may not park motor vehicles on sidewalks or lawn area. Residents may not keep inoperable or unlicensed vehicles on the premises. Residents will pay fines or charges incurred by HACEP for removing improperly parked or unregistered motor vehicles. Residents may not undertake major repairs on any motor vehicles on the premises. Oil spills in the parking area are to be cleaned immediately by the responsible resident.

Regarding De La O's attack on Rule D.1, the Court notes that "[a] section 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *See,*

---

*e.g., Fee v. Herndon,* 900 F.2d 804, 807 (5th Cir.1990). Here, Plaintiffs' Complaint alleges no facts, nor can the Court contemplate a set of facts, to support De La O's contention that Rule D.1 violates his free speech rights and denies him the "fair use of his leasehold." Thus, the Court is of the opinion Defendant is entitled to judgment as a matter of law as to that claim.

Also, in their Brief in Support of their Motion for Summary Judgment, Plaintiffs argue that Rule D.5 deprives them of a "property and liberty right without due process," and that Plaintiffs are entitled to judgment as a matter of law as to that claim. A careful reading of Plaintiffs' Complaint reveals, however, that Plaintiffs do not allege a due process claim. Rather, most, if not all, of the allegations contained in Plaintiffs' Complaint are directed to Plaintiffs' First Amendment claims. Thus, the Court does not address any alleged due process violations or Plaintiffs' arguments thereto.

*e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). If the movant does meet this burden, however, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See, e.g., Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "If the nonmovant fails to meet this burden, then summary judgment is appropriate." *Tubacex,* 45 F.3d at 954.

When making a determination under Rule 56, factual questions and inferences are viewed in a light most favorable to the nonmovant. *See Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Instead, the party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *See id.*

## Discussion

As previously indicated, Plaintiffs challenge Rules D.2 and D.5 under the "[f]irst, fourth, fifth and fourteenth amendments to the United States Constitution" and "42 U.S.C. §§ 1981, 1982, 1983, 1984, and 1988." Before addressing Plaintiffs' claims, however, the Court begins by expressing its exasperation with the briefing by the Parties, which contains more than its fair share of typographical errors, bold assertions of law without citation to supporting authority, and which often times cites a correct assertion of the law, but for the wrong proposition. Additionally, the Court notes that many of the statutes and constitutional amendments relied upon by Plaintiffs are clearly inapplicable to the facts which they posit in their Complaint. With that in mind, the Court now proceeds to addresses the Parties' arguments.

## I. Fourth Amendment and 42 U.S.C. §§ 1981, 1982, 1984 and 1988

With respect to Plaintiffs' claims for relief predicated upon the Fourth Amendment to the United States Constitution, the Court notes that the Fourth Amendment governs "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" by governmental actors, which a review of the facts alleged in Plaintiffs' Complaint clearly reveals is not implicated in this cause.

Regarding Plaintiffs' claims for relief under 42 U.S.C. §§ 1981 and 1982, those statutes provide a cause of action only for racial discrimination, which a review of Plaintiffs' Complaint again reveals they do not allege. *See Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976) (§ 1981); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968) (§ 1982). Thus, the Court finds that HACEP is entitled to judgment as a matter of law as to all claims asserted in Plaintiffs Complaint which are predicated upon the Fourth Amendment and 42 U.S.C §§ 1981 and 1982.

As to Plaintiffs' claims for relief under 42 U.S.C. § 1984, the Court points out that § 1984 has long been repealed. The Historical Note contained under § 1984 reveals that sections 1 and 2 thereof were declared unconstitutional in *In re Civil Rights Cases,* 109 U.S. 3, 25, 3 S.Ct. 18, 32, 27 L.Ed. 835 (1883), and sections 3 and 4 thereof were repealed in 1948. Thus, the Court finds that HACEP also is entitled to judgment as a matter of law as to any claim asserted by Plaintiffs which is predicated upon 42 U.S.C. § 1984.

Finally, 42 U.S.C. § 1988 does not create a separate cause of action; rather, it concerns the "proceedings in vindication of civil rights" and provides for the discretionary recovery of attorney's fees to a prevailing party on claims brought pursu-

ant to, among other statutes, 42 U.S.C. §§ 1981, 1982 and 1983. Thus, the Court is left to consider only Plaintiffs' claims under 42 U.S.C. § 1983.[4] The Court now proceeds to address those claims.

## II. 42 U.S.C. § 1983

■ In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

"Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.*

Here, as previously indicated, Plaintiffs argue Rules D.2 and D.5 tread upon their First Amendment rights and deny them equal protection under the law. HACEP, by contrast, argues that their rules pass constitutional muster in all respects. The Court agrees with HACEP.

■ In general, the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). Rather, "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

■ In *Perry*, the Supreme Court announced a "forum-based" approach to determine the constitutionality of governmental restrictions imposed on the use of its property. There, "the Court identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). "Traditional public fora are those places which 'by long tradition or by government fiat have been devoted to assembly and debate, such as public streets and parks.'" *Id.* (quoting *Perry*, 460 U.S. at 45, 103 S.Ct. at 954.) "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Id.* (citing *Perry*, 460 U.S. at 45–46 and n. 7, 103 S.Ct. at 955 and n. 7). Finally, there is the nonpublic forum, the residual class of government-owned property, to which the First Amendment does not guarantee access. *See Perry*, 460 U.S. at 46, 103 S.Ct. at 955; *Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 819 (5th Cir.1999). Government restrictions of speech in a traditional or designated public forum are subject to a strict scrutiny analysis, whereby such restrictions must be narrowly tailored to serve a compelling governmental interest. *See Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir.1992); *Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448. By contrast, governmental restrictions on speech, even a complete prohibition on speech, in a non-public forum survive as long as they are reasonable in light of the purpose

---

**4.** To be sure, the Court points out that, in response to HACEP's instant Motion, and in Plaintiffs' instant Motion, Plaintiffs limit their argument to their claims for relief under 42 U.S.C. § 1983.

served by the forum and are viewpoint-neutral. *See Hobbs,* 968 F.2d at 481; *see also Cornelius,* 473 U.S. at 800, 105 S.Ct. at 3448; *Perry,* 460 U.S. at 46, 103 S.Ct. at 955.

■ In *Daniel v. City of Tampa, Fla.,* 38 F.3d 546 (11th Cir.1994), the United States Court of Appeals for the Eleventh Circuit addressed the constitutionality of Fla.Stat. ch. 810.09, a statute nearly identical to Rule D.5 here. In so doing, the *Daniel* court concluded, among other things and like other courts which have considered the matter, that Florida's housing authority complexes, like HACEP's complexes here, are non-public forums. *See id.* at 550; *De La O v. Housing Authority of El Paso,* EP–98–CA–52–H, slip op. at 3 (W.D.Tex. Feb. 11, 1999) (finding HACEP's Sun Plaza complex non-public forum). Following their leads, the Court pauses only momentarily to conclude that HACEP's complexes are "non-public forums." The purpose of HACEP is to provide affordable housing to low income El Pasoans, not to provide non-residents with a place to disseminate ideas. This is evidenced by the fact that, by all accounts, HACEP limits access to its property to residents, their invited guests, and those conducting official business. Thus, HACEP's restrictions on access to its property pass constitutional muster as long as those restrictions are viewpoint-neutral and reasonable. *See, e.g., Hobbs,* 968 F.2d at 481. The Court finds HACEP's rules clear both of these hurdles.

■ First, Vasquez has presented absolutely no evidence to suggest that he was, or any non-resident has been, denied access to HACEP's complexes because HACEP disagreed with his political message. Nor has Vasquez presented any evidence to suggest Rules D.2 and D.5 were enacted, or are being applied, to filter those messages with which HACEP disagrees. Thus, the Court concludes HACEP's rules are content-neutral.

■ With respect to the reasonableness of Rules D.2 and D.5, the Court finds that such rules are a reasonable means of combating the above-mentioned criminal activity that, according to Defendant's uncontradicted summary judgment evidence, occurs on its property by non-residents. The Court further notes that Vasquez has access to the city-owned streets and sidewalks which are adjacent to HACEP's complexes, and in some instances, are contained within those complexes, to disseminate his political message. *See Daniel,* 38 F.3d at 550 (finding unlimited access to adjacent city-owned streets and sidewalks important factor in determining reasonableness of Florida's trespass after warning statute). Likewise, De La O, like all HACEP residents, has the unfettered right to invite any political candidate to his residence to discuss that individual's candidacy, without running afoul of the rules. All told then, because HACEP's rules are both content-neutral and reasonable, the Court finds HACEP's implementation of those rules do not violate Plaintiffs' First Amendment rights. Having so decided, the Court now addresses Plaintiffs' overbreadth challenge.

■ Rules D.2 and D.5 will survive an overbreadth challenge unless they reach a " 'substantial amount of constitutionally protected conduct.' " *United States v. Wicker,* 933 F.2d 284, 287 (5th Cir.1991) (quoting *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). The overbreadth analysis primarily has been used to invalidate governmental restrictions affecting freedoms of expression and association protected by the First Amendment. *See id.* Because Plaintiffs have failed to demonstrate that Rules D.2 and D.5 tread upon their First Amendment rights, that is, that the rules reach a substantial amount of constitutionally protected conduct, the Court finds Plaintiffs' overbreadth challenge likewise fails. The Court now addresses Plaintiffs' equal protection claim.

■ Next, Plaintiffs argue that Rules D.2 and D.5 violate their equal protection rights because "Defendant has created two classes: persons who wish to campaign who reside in [HACEP] complexes, and those who do not reside." In an attempt to support its claim that its rules do not violate Plaintiffs' equal protection rights, HACEP argues that, as long as their rules "provide[ ] citizens with clear notice of what is prohibited, and enforcement of the policy leaves little to the discretion of the enforcer, equal protection rights are not taken." HACEP is mistaken, and the Court finds HACEP's proposition of law better suited to an analysis of whether a governmental regulation is constitutionally void for vagueness. *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) ("[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). Instead, the Court finds the more appropriate framework applicable to analyzing Plaintiffs' equal protection claim to be that set forth in *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976), where the Supreme Court stated, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." When fundamental rights or suspect classifications are involved, however, stricter judicial scrutiny is called for. *See id.*

■ Here, the Court is not persuaded that Plaintiffs have an equal protection claim. Because Rules D.2 and D.5 are not "drawn upon [an] inherently suspect distinction[ ] such as race, religion, or alienage," they are not subject to any heightened equal protection scrutiny. *See id.* Moreover, because the right to canvass door to door to solicit campaign support in a non-public forum is not fundamental right per se in the constitutional sense, any alleged classification created by HACEP merely must be rationally related to a legitimate state interest. *See id.* That is to say, HACEP must merely have some minimal justification for treating non-residents differently from residents. As previously indicated, such justification exists because HACEP complexes suffer from criminal activity, the majority of which is committed by non-residents. Because the Court finds HACEP Rules D.2 and D.5 rationally related to the problem for which they were designed to address, Plaintiffs' equal protection claim fails. Thus, having reviewed the summary judgment evidence presented and resolved all factual doubts in Plaintiffs' favor, the Court finds no outstanding issues of material fact exist with respect to Plaintiffs' claims and that HACEP is entitled to judgment as a matter of law on those claims.

Accordingly, **IT HEREBY IS ORDERED** that Defendant the Housing Authority of the City of El Paso's "Motion for Summary Judgment" is **GRANTED**.

**IT FURTHER IS ORDERED** that Plaintiffs Robert S. Vasquez and Jesus De La O's "Motion for Summary Judgment" is **DENIED**.

**IT FURTHER IS ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE**.

**IT FINALLY IS ORDERED** that the "Temporary Restraining Order" entered in this cause on March 31, 2000, is **VACATED**.

### FINAL JUDGMENT

On this day, the Court entered an Order granting Defendant the Housing Authority of the City of El Paso's "Motion for Summary Judgment" and denying Plaintiffs Robert S. Vasquez and Jesus De La O's

"Motion for Summary Judgment," filed in this cause. The Court now enters its Final Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT HEREBY IS ORDERED** that Defendant the Housing Authority of the City of El Paso's "Motion for Summary Judgment" is **GRANTED.**

**IT FURTHER IS ORDERED** that Plaintiffs Robert S. Vasquez and Jesus De La O's "Motion for Summary Judgment" is **DENIED.**

**IT FURTHER IS ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT FINALLY IS ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**