**Rosalina DE LA O, and, Maria Christina Rivera Plaintiffs,**

v.

**HOUSING AUTHORITY OF the CITY OF EL PASO Defendant.**

**No. EP–02–CA–0456–DB.**

United States District Court, W.D. Texas, El Paso Division.

March 24, 2004.

Fernando Chacon, Attorney at Law, El Paso, TX, for Rosalina De La O and Maria Christina Rivera.

Michael C. Crowley and Edward W. Dunbar, Dunbar, Crowley & Hegeman, LLP, El Paso, TX, for The Housing Authority of the City of El Paso.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant the Housing Authority of the City of El Paso's ("HACEP") "Amended Motion to Dismiss and Motion for Summary Judgment and Memorandum of Authorities In Support" ("Amended Motion to Dismiss and Motion for Summary Judgment"), filed in the above captioned cause on December 3, 2002.[1] On December 16, 2002, Plaintiffs Rosalina De La O ("De La O") and Maria Christina Rivera ("Rivera") (collectively, "Plaintiffs") filed a "Reply in Opposition to Defendant's Amended Motion to Dismiss and Motion for Summary Judgment with Memorandum of Law" ("Second Response"). Defendants filed a "Reply in Support of Motion To Dismiss and Motion For Summary Judgment" ("Reply") on January 3, 2003. On April 10, 2003, Plaintiffs filed a "Supplemental Reply In Opposition To Defendant's Amended Motion To Dismiss and Motion For Summary Judgment With Memorandum of Law" ("Supplemental Response"). And finally, Plaintiff's filed a "Response To Defendnt's [sic] Supplemental Reply In Support of Motion To Dismiss and Motion For Summary Judgment" ("Sur–Reply") on April 29, 2003. After due consideration, the Court is of the opinion that HACEP's Amended Motion should be granted for the reasons that follow.

### Facts & Procedural History

HACEP is a housing authority which maintains various government-owned housing complexes for use by eligible low income residents of El Paso, Texas. Plaintiffs are tenants of one of HACEP's complexes, the Sun Plaza Apartments ("Sun Plaza").[2] Like other HACEP properties, Sun Plaza is governed by Rules D.2 and D.5 contained in the "Housing Authority of the City of El Paso Community and Resident Rules for Public Housing Program and Section 8 New Construction Program," which limits access by non-residents to HACEP's complexes.[3]

Ned Beman, HACEP's Director of Housing Management, establishes in an affidavit that the purpose of Rules D.2 and

---

1. On February 24, 2003, the Court entered an Order denying Defendant's initial "Motion to Dismiss and Motion for Summary Judgment" as moot. In said Order, the Court instructs the parties that it will proceed to consider Defendant's Amended Motion to Dismiss, Plaintiff's Second Response, and Defendant's Reply, which are dealt with in this Memorandum Opinion and Order. Needless to say, the Parties have demonstrated a difficulty in labeling their pleadings in a correct and succinct fashion. Nevertheless, the Court will deal with the key arguments that never seemed to change in the pleadings that succeeded Defendant's Amended Motion to Dismiss.

2. All HACEP complexes are adjacent to city-owned streets and sidewalks. Some HACEP complexes have city-owned streets and sidewalks within them.

3. Rule D.2 ("trespass after warning" rule), provides as follows:

   Trespassing. The development premises are for the exclusive use and enjoyment of the residents, members of their households, their guests and visitors, and such other persons who have legitimate business on the premises, e.g., law enforcement and other governmental personnel, utility service workers, HACEP contractors, and others as authorized by HACEP. All other persons will be regarded as trespassers subject to prosecution as allowed by state or municipal ordinance.

   Any person who desires access to any development premises and any person found on

D.5 are for the protection and safety of HACEP's tenants, many of which are elderly residents and are frightened by door-to-door solicitors due to the fact that the majority of those arrested on HACEP property are non-residents engaged in narcotics distribution. Additionally, Beman's uncontradicted testimony reveals that the United States Immigration and Naturalization Service operates a surveillance station in at least one of its complexes, the Sun Plaza, because of the large number of undocumented aliens who pass through that complex.

Plaintiffs initiated this lawsuit on October 1, 2002, and by their Amended Complaint, Plaintiffs assert five causes of action arguing that Rules D.2 and D.5 violate their rights under the "First, Fifth and Fourteenth amendments to the United States Constitution," and "42 U.S.C. §§ 1983[and] 1988." On November 22, 2002, Plaintiffs filed a "First Amended Original Complaint and Application For Injunctive Relief" ("Amended Complaint").

In said Amended Complaint, Plaintiffs assert five causes of action, the third cause

being a petition for permanent injunctive relief. In essence, Plaintiffs argue that HACEP's rules violate their civil rights because it bans and restricts speech by barring the right to campaign door-to-door on HACEP property and to distribute campaign literature to its residents. Plaintiffs maintain that the rules violate their rights to receive such campaign information from candidates and, in turn, to reciprocate by expressing her view to those candidates. Plaintiffs also maintain that Rules D.2 and D.5 are overbroad. Plaintiffs also aver that Rules D.2 and D.5 violate their right of equal protection under the law.

On October 7, 2002, the Court issued a Temporary Restraining Order ("TRO") in this cause, enjoining HACEP from prohibiting political candidates, and their volunteers, from canvassing door-to-door on HACEP's property until a final hearing was held on the matter. On October 17, 2002, the Court held a hearing where it upheld the TRO. The Parties' instant Motion followed.[4]

the walks, ways, playgrounds, parking lots, drives and other common areas of the development premises will be required by any law enforcement or HACEP personnel to identify himself or herself and to prove authority to be on the development premises. Any person who refuses to provide personal identification or cannot show authority to be on the development premises will receive a "trespass warning" ordering the person to leave the development premises or be subject to arrest and prosecution to the extent permitted by state law or municipal ordinance.

Any person observed by law enforcement or HACEP personnel violating any HACEP rule, or federal, state or municipal law, regulation, or ordinance will be ordered by law enforcement or HACEP personnel to leave the development premises.

Rule D.5 ("door-to-door solicitation rule"), provides as follows:

Notices and Flyers. HACEP does not allow door-to-door sales. If a resident desires to

distribute notices or flyers in his development, the resident must obtain advance approval of the Development's Housing Manager and provide the Housing Manager with a copy of the proposed notice or flyer. A resident may not distribute a notice or flyer before 9:00 a.m. or after 8:00 p.m. Under no circumstances will a notice or a flyer be left in plain view on a resident's door if a resident of the unit is not at home or declines to answer the door. A resident distributing such flyers or notices must do nothing to allow the flyers or notices to become litter or which would disrupt the peaceful use and enjoyment of the other residents in the development or the residents' use of common areas.

4. On July 13, 2000, the Court entered a "Memorandum Opinion and Order" granting Defendant's Motion for Summary Judgment in a separate case, *Vasquez v. Housing Authority of The City of El Paso* ("*Vasquez* Opinion"), 103 F.Supp.2d 927 (W.D.Tex.2000). Said

## Standard on Motion for Summary Judgment

To the extent that the Court goes beyond the original pleadings in this cause, the Court treats the instant Motion as motion for summary judgment pursuant to Rule 56, because the alternative facilitates disposition of this action. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (2d ed. 1990 & Supp.2000).

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party that moves for summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). If the movant does meet this burden, however, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See, e.g., Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. "If the nonmovant fails to meet this bur-

den, then summary judgment is appropriate." *Tubacex,* 45 F.3d at 954.

When making a determination under Rule 56, factual questions and inferences are viewed in a light most favorable to the nonmovant. *See Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Instead, the party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *See id.*

## Discussion

As indicated, Plaintiffs challenge Rules D.2 and D.5 under the First, Fifth and Fourteenth amendments to the United States Constitution, and 42 U.S.C. §§ 1983[and] 1988.

### I. Fourth Amendment and 42 U.S.C. § 1988

As an initial matter, the Court dismisses certain legal grounds needlessly raised in the instant Motion.[5] Plaintiffs completely disregard the *Vasquez* Opinion by stating that this case is brought pursuant to, *inter alia,* the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1988.

Once again, the Court notes that the Fourth Amendment governs "[t]he right of the people to be secure in their persons, houses, papers and effects, against unrea-

---

opinion dealt with issues that were virtually identical to this cause of action, save one of the Plaintiffs in *Vasquez* was a political candidate who sought to disseminate his platform(s) on HACEP property. The Court maintains the same reasoning and builds upon the bedrock established in the *Vasquez* Opinion when ruling on the instant motion.

**5.** The Court's patience is wearing thin since Counsel for both parties in this cause of action also participated in the *Vasquez* litigation. Said Counsel should have been intimately familiar with the legal intricacies covered in the *Vasquez* Opinion because the Court does not have the luxury of time to deal with issues that could be easily omitted by attentive Counsel.

sonable searches and seizures" by governmental actors, which are obviously not in play in this cause.

■ Furthermore, 42 U.S.C. § 1988 does not create a separate cause of action; rather, it concerns the "proceedings in vindication of civil rights" and provides for the discretionary recovery of attorney's fees to a prevailing party on claims brought pursuant to, among other statutes, 42 U.S.C. §§ 1981, 1982 and 1983. 42 U.S.C.A. § 1988 (West 2003). Thus, the Court is left to consider only Plaintiffs' claims under 42 U.S.C. § 1983, as related to the rights protected by the First, Fifth, and Fourteenth Amendments. The Court now proceeds to address those claims.

## II. 42 U.S.C. § 1983

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C.A. § 1983 (West 2003). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.*

Here, as previously indicated, Plaintiffs argue Rules D.2 and D.5 violate their First Amendment rights and deny them equal protection under the law pursuant to the Fourteenth Amendment. Conversely, HACEP argues that its rules survive constitutional scrutiny. The Court agrees with HACEP.

In general, the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). Rather, "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

■ In *Perry*, the Supreme Court announced a "forum-based" approach to determine the constitutionality of governmental restrictions imposed on the use of its property. There, "the Court identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). "Traditional public fora are those places which 'by long tradition or by government fiat have been devoted to assembly and debate, such as public streets and parks.'" *Id.* (quoting *Perry*, 460 U.S. at 45, 103 S.Ct. at 954.) "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Id.* (citing *Perry*, 460 U.S. at 45–46 and n. 7, 103 S.Ct. at 955 and n. 7). Finally, there is the nonpublic forum, the residual class of government-owned property, to which the First Amendment does not guarantee access. *See Perry*, 460 U.S. at 46, 103

S.Ct. at 955; *Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 819 (5th Cir.1999). Government restrictions of speech in a traditional or designated public forum are subject to a strict scrutiny analysis, whereby such restrictions must be narrowly tailored to serve a compelling governmental interest. *See Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir.1992); *Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448. By contrast, governmental restrictions on speech, even a complete prohibition on speech, in a non-public forum survive as long as they are reasonable in light of the purpose served by the forum and are viewpoint-neutral. *See Hobbs*, 968 F.2d at 481; *see also Cornelius*, 473 U.S. at 800, 105 S.Ct. at 3448; *Perry*, 460 U.S. at 46, 103 S.Ct. at 955.

■ In *Daniel v. City of Tampa, Fla.*, 38 F.3d 546 (11th Cir.1994), the United States Court of Appeals for the Eleventh Circuit addressed the constitutionality of Fla. Stat. ch. 810.09, a statute nearly identical to Rule D.5 here. In so doing, the *Daniel* court concluded, among other things and like other courts which have considered the matter, that Florida's housing authority complexes, like HACEP's complexes, are non-public forums. *See id.* at 550; *see also De La O v. Housing Authority of El Paso*, EP–98–CA–52–H, slip op. at 3 (W.D.Tex. Feb. 11, 1999) (finding HACEP's Sun Plaza complex non-public forum). Yet again, the Court remains true to precepts expressed in the *Vasquez* Opinion by concluding that HACEP's complexes are "non-public forums." The purpose of HACEP is to offer affordable housing to the low income community, not to provide non-residents with a place to dispense their political ideology. This is evinced by HACEP limiting access to residents of the complex, their invited guests, and those conducting official business. Therefore, HACEP's restrictions on access

to its property pass scrutiny so long as those restrictions are viewpoint-neutral and reasonable. *See, e.g., Hobbs*, 968 F.2d at 481. The Court finds HACEP's rules satisfy both constitutional requirements.

■ First, Plaintiffs have not presented one scintilla of evidence that suggests that any political candidates were denied access to HACEP's complexes because HACEP disagreed with a particular political message. Moreover, Plaintiffs have not presented any evidence to suggest Rules D.2 and D.5 were enacted, or are being applied, to censor those messages with which HACEP disagrees. Thus, the Court concludes HACEP's rules are content-neutral.

With regards to the reasonableness of the rules, the Court finds that Rules D.2 and D.5 are a reasonable means of combating the above-mentioned criminal activity that, according to Defendant's uncontradicted summary judgment evidence, occurs on its property by nonresidents. The Court also notes that political candidates who are campaigning do, in fact, have access to the city-owned streets and sidewalks adjacent to HACEP's complexes, and in some instances, are contained within those complexes, to disseminate their political platform(s). *See Daniel*, 38 F.3d at 550 (finding unlimited access to adjacent city-owned streets and sidewalks important factor in determining reasonableness of Florida's trespass after warning statute). Similarly, Plaintiffs have the right to invite any political candidate to her residence to discuss that individual's candidacy, without running afoul of the rules. In the final analysis, because HACEP's rules are both content-neutral and reasonable, the Court finds HACEP's implementation of those rules do not violate Plaintiffs' First Amendment rights. Having so decided, the Court now addresses Plaintiffs' overbreadth challenge.

Rules D.2 and D.5 will survive an overbreadth challenge unless they reach a "'substantial amount of constitutionally protected conduct.'" *United States v. Wicker*, 933 F.2d 284, 287 (5th Cir.1991) (quoting *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). The overbreadth analysis primarily has been used to invalidate governmental restrictions affecting freedoms of expression and association protected by the First Amendment. *See id.* Since the Plaintiffs failed to put forth any evidence as to how Rules D.2 and D.5 tread upon their rights of expression and association protected by the First Amendment, the Court finds Plaintiffs' overbreadth challenge likewise fails. The Court now addresses Plaintiffs' equal protection claim pursuant to the Fourteenth Amendment.

■ Plaintiffs argue the HACEP rules in question violate their equal protection rights because HACEP "prohibits candidates and all others from going door-to-door [, which] deprives plaintiffs of their right to equal protection because all other Americans, and all other El Pasoans, are guaranteed the right to door-to-door political solicitation by candidates and other purveyors of information ..." As in *Vasquez*, Defendant erroneously retorts that its rules do not violate Plaintiffs' equal protection rights as long as its rules "provide[ ] citizens with clear notice of what is prohibited, and enforcement of the policy leaves little to the discretion of the enforcer." As explained in the *Vasquez* Opinion, HACEP's proposition of law is better suited to an analysis of whether a governmental regulation is constitutionally void for vagueness. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) ("[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). Instead, the Court finds the more appropriate framework applicable to analyzing Plaintiffs' equal protection claim to be that set forth in *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976), where the Supreme Court stated, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." When fundamental rights or suspect classifications are involved, however, stricter judicial scrutiny is called for. *See id.*

■■ Here, Rules D.2 and D.5 are not "drawn upon [an] inherently suspect distinction[ ] such as race, religion, or alienage," thus they are not subject to any heightened equal protection scrutiny. *See id.* Moreover, because the right to canvass door-to-door in order to solicit campaign support in a non-public forum is not a fundamental right, per se, in the constitutional sense, any alleged classification created by HACEP must be merely rationally related to a legitimate state interest. *See id.* Public housing authority trespass policies extending to development streets and sidewalks have been deemed fortified against Fourteenth Amendment substantive and procedural due process challenges. *See* Peter M. Flanagan, *Trespass-Zoning: Ensuring Neighborhoods A Safer Furture By Excluding Those With A Criminal Past*, 79 Notre Dame L.Rev. 383 (2003). HACEP must simply have some minimal justification for treating non-residents differently from residents. As pre-

viously indicated, such justification exists because HACEP complexes suffer from criminal activity, the majority of which is committed by non-residents. Because the Court finds HACEP Rules D.2 and D.5 rationally related to the problem for which they were designed to address, Plaintiffs' equal protection claim fails. Thus, having reviewed the summary judgment evidence presented and resolved all factual doubts in Plaintiffs' favor, the Court finds no outstanding issues of material fact exist with respect to Plaintiffs' claims and thus HACEP is entitled to judgment as a matter of law on those claims.

Accordingly, **IT HEREBY IS OR-DERED** that Defendant the Housing Authority of the City of El Paso's "Amended Motion for Summary Judgment" is **GRANTED.**

**IT FURTHER IS ORDERED** that the "Temporary Restraining Order" entered in this cause on October 7, 2002, is **VACATED.**

**IT FURTHER IS ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT FINALLY IS ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**

### FINAL JUDGMENT

On this day, the Court entered an Order granting Defendant the Housing Authority of the City of El Paso's "Amended Motion For Summary Judgment" filed in this cause. The Court now enters its Final Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT HEREBY IS OR-DERED** that Defendant the Housing Authority of the City of El Paso's "Amended Motion For Summary Judgment" is **GRANTED.**

**IT FURTHER IS ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT FINALLY IS ORDERED** that all other pending motions, if any, are **DENIED AS MOOT.**