## Frances Harris v. The State.

### No. 4573. Decided May 27, 1918.

**Aggravated Assault—Teacher and Pupil—Sufficiency of the Evidence.**

Where, upon trial for aggravated assault, the evidence showed that the defendant was a teacher in the public schools, and the alleged injured party one

of her pupils, about thirteen or fourteen years of age when the assault occurred; that the teacher claimed justification in the exercise of moderate correction of the pupil without malice towards him and administered 'his chastisement in a desire to enforce discipline, etc., but the evidence showed that the question of excessive punishment was one involving the facts of the case upon which the jury must pass, the conviction will not be disturbed.

Appeal from the County Court of Law No. 2 of Harris. Tried below before the Hon. Murray B. Jones.

Appeal from a conviction of aggravated assault; penalty, a fine of twenty-five dollars.

The opinion states the case.

*J. M. Gibson,* for appellant.—Upon question of the insufficiency of the evidence: Dowlin v. State, 14 Texas Crim. App., 61; Greer v. State, 52 Texas Crim. Rep., 331, 106 S. W. Rep., 359; Ely v. State, 68 Texas Crim. Rep., 562, 152 S. W. Rep., 631; Kinnard v. State, 33 S. W. Rep., 234; Hutton v. State, 23 Texas Crim. App., 386; Stephans v. State, 44 Texas Crim. Rep., 67.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction was for aggravated assault, the punishment a fine of $25. The sole question is the sufficiency of the evidence.

The appellant was a teacher in one of the public schools of Houston and the alleged injured party was one of the pupils in the school. That appellant gave Max Larrieu, a boy between thirteen and fourteen years of age, a whipping is not denied, but it is claimed to be justified under article 1014, P. C., which permits the exercise of moderate restriction and correction of a pupil by the teacher.

The boy, according to the testimony of appellant, had been unruly at a previous term. On the occasion in question, having left his seat several times and disturbed the recitation, was told by her if he did so again she would whip him. She subsequently found him on the floor, under his desk, he claiming he was looking for his pencil, which she says she thought he had thrown on the floor as an excuse. She undertook to whip him with a leather strap about one inch wide and fourteen inches long. He resisted and struggled, and Miss Johnson, another teacher, came to her assistance. He got on a stairway and she pulled him down to prevent injury to him and took him to the principal's room, where, while the principal was holding him, she hit him several licks with a strap about two inches wide and fourteen inches long. She said she struck him about twenty-five licks altogether. She had, she said, no ill-will or malice towards him or intent to injure. Did not know he was hurt. Only used a strap that was provided by the school authorities; was actuated solely by desire to enforce discipline; was not mad or angry but was only determined to conquer him. She left him

in the principal's office and that official says he hit him five or six times with a strap after appellant left. She testified that she had heard him tell Miss Johnson that she, appellant, was a liar, that he did not misbehave.

The boy, Max, said he did not misbehave; that he did not hear Miss Harris tell him she would whip him if he left his seat; that he dropped his pencil and got down to get it; that he resisted and tried to escape because he had not misbehaved; that appellant twisted his arm when he tried to escape and he told her she was breaking his arm, and at Miss Johnson's suggestion she released him; that after the whipping began he was taken to Miss Johnson's room and saw two straps on the floor, picked up the larger one and threw it aside to prevent its use; that when he got to the principal's room he picked up a baseball bat to protect himself but did not try to use it; that while there he tried to explain he had not misbehaved. He claims appellant looked mad. He reported the incident to several persons after school was dismissed. Says he looked at his back in a glass and saw stripes, making his back look like a flag. It was covered with marks; some of them blue two days after the incident and in places the blood was clotted. His undershirt was bloody. That the straps used were about two feet long; that appellant struck him about twenty-five licks before going to the principal's office, where she whipped him with the larger strap, as did the principal also. He claims that at the time of the trial there were marks remaining on him and he was still suffering pain from them.

The trial took place on the 12th day of April; the incident happened on the 4th of the same month. The assistant district attorney testified that the boy was brought to his office on the evening of April 4th and that he stripped him to his waist. We quote from him as follows: "He was marked all over his back and arms, blood coming to the surface in a number of places. I did not count them, but there were such marks and bruises in approximately forty to forty-five places. There were marks and whelps all over the boy's back and shoulders, on his neck, arm and over one eye." The assistant county health officer said that he had examined the boy on the morning of April 5th. Stripped him to his waist and that he counted twenty-five stripes on his back, some wider than others and some bursted the skin. He said: "The wounds that had ruptured the skin showed clotted blood on the surface and there was swelling and contusions. There were also marks on his neck which were blood-shot. The marks on his back were blue and inflamed. The skin was broken in places." While this doctor was testifying the boy was identified and stripped to the waist, pants rolled up and examined by the court. The witness says there was still evidence of bruises on his back which were yellowish green and a number of places where blood was oxidizing; that the wounds were very painful and showed evidence of a severe whipping. He declared that the boy was in average health with no peculiarities of circulation or otherwise.

It appeared that at the time of the whipping he was in his shirt

sleeves; had on a calico shirt, undershirt, pants and drawers of light material. Several other witnesses testified that they examined the boy on the evening of the incident and described his condition in substance like those referred to above.

Appellant stresses the case of Stephens v. State, 44 Texas Crim. Rep., 67, in which the facts showed that the boy had been whipped with two switches, receiving about thirty-three licks, causing stripes, bruises and blue places upon him from just below the hips down nearly to the ankles, but the licks on the shoulders left no marks. He was wearing cotton pants, extending down to the ankles but no drawers, but this fact was not known to appellant. Appellant in that case disclaimed any ill-will or anger but that the whipping was given alone to enforce discipline. The court said: "The law confides in the teacher the discretionary power to punish pupils, and exonerates them from punishishment unless the whipping is excessive or malicious." It further says: "It is a presumption in favor of appellant that in correcting a pupil he did so in the exercise and within the bounds of lawful authority."

The statute, article 1014, Vernon's C. C. P., requires that the punishment be moderate. There is no further legal definition of the measure or character of the punishment. Necessarily the question of what is moderate punishment in a given case is to a large extent a question of fact. In Whitley v. State, 33 Texas Crim. Rep., 172, a boy seventeen years of age was punished by striking him sixty odd licks and the conviction was sustained, the court remarking that it was not sound to assume that a pupil might be whipped until he was subdued. Other cases discussing the matter are Spear v. State, 25 S. W. Rep., 125; Howerton v. State, 43 S. W. Rep., 1018; Bell v. State, 18 Texas Crim. App., 53; Smith v. State, 20 S. W. Rep., 360; Hutton v. State, 23 Texas Crim. App., 386; Dowlen v. State, 14 Texas Crim. App., 61; Kinnard v. State, 33 Texas Crim. Rep., 234. In Howerton's case the opinion was written by Presiding Judge Hurt from which we quote as follows: "If the testimony of Mrs. McGee, who examined the girl a few days after the whipping, be true, we do not feel that we would be warranted in setting aside the verdict of the jury in this case. She says that she examined the girl Tuesday afternoon, after school, and that there was a bruised place on her shoulder that she could not cover with her hand. Other witnesses testify to seeing marks of switching, both on the day it happened, and for several days thereafter. The charge of the court required the jury to believe that the punishment was excessive before they could convict defendant. As above stated, we do not feel that we are authorized to set aside the verdict of the jury. We have found no error in this record, and the judgment is accordingly affirmed."

The intent with which the whipping was given was a matter to which an accused may testify (Kinnard v. State, 33 S. W. Rep., 234), but his statement will not be conclusive against other evidence tending to contradict it. In this case there was evidence that the idea of appellant

was that the measure of her duty was not to exercise moderate correction but to continue the punishment until the pupil was conquered. This seems also to have been the view of the principal, who says that when appellant brought the boy into his room that it was apparent that he was not conquered and that he authorized further punishment, and continued the punishment himself until the child was conquered.

Whether the punishment was excessive or not was also a question of fact, at least it was a mixed question involving fact. The fact that the punishment caused injuries which were due to some unusual condition of the skin of the child would not be chargeable against the teacher in the absence of knowledge of it. Fly v. State, 68 Texas Crim. Rep., 562, 152 S. W. Rep., 631; but in this case that question is not involved because the child appears to have been a normal child so far as the healthy condition of his skin was concerned. His statement that the teacher was mad is not more conclusive than her statement that she was not. Both are to be construed in connection with the other facts developed and passed on under the rule that the credibility of witnesses is for the court when trying a case without a jury. These were all before the trial judge. He not only heard the witnesses but examined the boy. Under these circumstances, and in view of the testimony of appellant that her determination was to conquer the boy, we do not feel authorized to disturb the finding of the trial judge to whom the decision of the questions of fact and law were committed.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, JUDGE, not sitting.