858 F.2d 269
 49 Ed. Law Rep. 490
 Crystal CUNNINGHAM per next friend Robert Ruby Cunningham,
and Ashley Johnson per next friend, Larry Johnson,
Plaintiffs-Appellants,
v.
Harry J. BEAVERS, Superintendent of Schools, Jacksonville
Independent School District, et al., Defendants-Appellees.
 No. 88-2304
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 26, 1988.
 
 Peter J. Riga, Houston, Tex., John B. Roesler, Santa Fe, N.M., for plaintiffs-appellants.
 John C. Hardy, Hardy & Atherton, Tyler, Tex., James P. Moon, Simpson, Dowd, Kaplan, Lewis & Dowd, Dallas, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before CLARK, Chief Judge, JOHNSON and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 This case involves a civil rights action for money damages which the district court dismissed, finding that the plaintiffs had stated no claim of deprivation of their equal protection and due process rights when they were paddled by school authorities. Because the state of Texas allows for the corporal punishment of children, and provides adequate state criminal and tort remedies for excessive punishment, we affirm the district court's dismissal of the plaintiffs' section 1983 complaint.
 
 
 2
 * On May 6, 1987, Mary Sue Bruno, a public kindergarten school principal, saw Crystal Cunningham, five-years old, and Ashley Johnson, six-years old, snickering in the hall. Bruno gave each child two swats on the buttocks with a wooden paddle. When the girls returned to the classroom, their teacher, Rosa Cook, saw them still snickering. Cook took them out into the hallway and gave them another three swats across their buttocks with a wooden paddle.
 
 
 3
 When Ashley Johnson's grandmother bathed her that night, she noticed black and blue marks on Ashley's buttocks. After Ashley told her grandmother what had happened, Dr. Anita D'Sa examined Ashley and said that she had been spanked too hard. Both Ashley and Crystal were then taken by their parents to the Jacksonville Police Department where they made out a report, and an officer took color photographs of the bruises. The next day the children were taken to the Child Welfare Office where social workers took more photographs and stated that the situation clearly constituted child abuse. Ashley and Crystal missed three days of school that week, and three the following week. They cried and said that they did not want to return to school.
 
 
 4
 After the superintendent of schools, Harry Beavers, was told what had occurred, he made his own investigation. He spoke with the children but took no steps to discipline the other defendants.
 
 
 5
 The plaintiffs sued under 42 U.S.C. Sec. 1983, alleging that the defendants, while acting under color of state law, deprived them of their federal constitutional rights. They sought monetary damages from the public school kindergarten principal and teacher who inflicted the injuries, and from the superintendent of schools and the Chairman of the Jacksonville Independent School District Board of Trustees for permitting the injuries to occur. The district court granted the defendants' motion to dismiss for failure to state a claim.
 
 
 6
 On appeal the plaintiffs assert that they were denied their rights to substantive due process because the punishment they received was excessive under the circumstances, and to equal protection, because the laws permitting the corporal punishment of children in schools are not rationally related to their goals.
 
 II
 A.
 
 7
 The Supreme Court, in a similar case involving student paddling, held that although corporal punishment in public schools implicates a constitutionally protected liberty interest, traditional common law remedies are fully adequate to afford students due process. Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), affirming 525 F.2d 909 (5th Cir.1976) (en banc). Under Florida law, the Court noted, if the punishment inflicted is later found to have been excessive, the school authorities who inflicted it may be held liable in damages to the child, and possibly criminally liable if malice is shown. 430 U.S. at 678, 97 S.Ct. at 1415 & n. 45.
 
 
 8
 Following the Fifth Circuit and Supreme Court decisions in Ingraham, in Coleman v. Franklin Parish School Board this circuit affirmed the dismissal of claims for denial of due process where, by statute and jurisprudence, Louisiana had provided limits on the use of corporal punishment. 702 F.2d 74, 76 (5th Cir.1983). In Coleman, a six-year-old first-grader sustained a minor head injury requiring two stitches when he was engaged in horseplay with another boy and a teacher struck him in the head with a coffee cup. The court recited Ingraham's holding that corporal punishment in concept is not arbitrary, capricious or wholly unrelated to the legitimate purpose of determining educational policy. If a remedy could be had for the violation of statutory limits on corporal punishment under Louisiana law, it held, an action for damages lies in state court. 702 F.2d at 76. Coleman did not state a claim for relief for a substantive due process violation; therefore, the district court properly dismissed the complaint for failure to state a claim.
 
 
 9
 Once again, in Woodard v. Los Fresnos, this circuit dismissed a civil rights action alleging a deprivation of procedural due process in the administration of corporal punishment to a student. In Woodard, a high school student was given three spanks for using abusive language to a school bus driver. This court said that "the infliction of punishment may transgress constitutionally protected liberty interests, but, if the state affords the student adequate post-punishment remedies to deter unjustified or excessive punishment and to redress that which may nevertheless occur, the student receives all the process that is constitutionally due." 732 F.2d 1243 at 1245 (5th Cir.1984). We noted that Texas provides these traditional common law remedies.
 
 
 10
 In the instant case, the same common law remedies are available to the plaintiff. See, e.g., Tex.Penal Code Ann. Sec. 9.62 (Vernon); Tex.Educ.Code Ann. Sec. 21.912 (Vernon Supp. 1986); Hopkins v. Spring Independent School Dist., 736 S.W.2d 617, 618-19 (Tex.1987); Barr v. Bernhard, 562 S.W.2d 844 (Tex.1978). For example, in Hogenson v. Williams, 542 S.W.2d 456 (Tex.Civ.App.--Texarkana 1976), a seventh grader was struck on his helmet by his football coach who was displeased with his performance. The boy was hit with sufficient force to cause him to stumble and fall to the ground. He was later admitted to a hospital, complaining of weakness of his left hand, left forearm and elbow, and spasms of his left neck muscles. It was several months before he recovered from his condition, diagnosed as a severe cervical sprain. His parents sued the coach to recover damages for assault. Although the coach argued that the physical contact he used was privileged, the court enunciated the rule of privileged force as that rule is properly applied in a civil assault case against a school teacher:
 
 
 11
 [A]ny force used must be that which the teacher reasonably believes necessary (1) to enforce compliance with a proper command issued for the purpose of controlling, training or educating the child, or (2) to punish the child for prohibited conduct; and in either case, the force or physical contact must be reasonable and not disproportionate to the activity or the offense.
 
 
 12
 542 S.W.2d at 460. If the spankings given Crystal and Ashley were unreasonable and/or disproportionate to their offense of "snickering," the plaintiffs would be entitled to relief under Texas common law.
 
 
 13
 For these reasons, we find that the plaintiffs have not stated a claim of deprivation of due process. We are bound by our clear precedents in Ingraham, Woodard and Coleman, and therefore affirm the district court's dismissal of the plaintiffs' substantive due process claims.
 
 B.
 
 14
 We next turn to the plaintiffs' equal protection claim. The plaintiffs argue that the common law end of the privilege to inflict corporal punishment on school children is discipline and education, but because modern research has proved this rationale to be irrational and counterproductive, the Texas laws allowing for the corporal punishment of children should be struck down as unconstitutional.
 
 
 15
 The plaintiffs first contend that children should be viewed as a suspect class because history is "filled with examples of the mistreatment of children." In the alternative, they argue that since children are an "at risk" group like women and aliens as a result of their historic mistreatment, the Texas corporal punishment laws should be subjected to intermediate scrutiny of their relevance to the goals sought.
 
 
 16
 The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike; it does not require classes of people different in fact or opinion to be treated in law as though they were the same. Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, reh. denied, 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982) (citing F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed.2d 1124 (1940)). Because a legislature must have substantial latitude to establish classifications when it attempts to remedy a perceived problem, we look only to whether the classification at issue bears a rational relationship to a legitimate public purpose in applying the Equal Protection Clause to a classification which neither disadvantages a suspect class nor impinges upon the exercise of a fundamental right. Plyler, 457 U.S. at 217-18, 102 S.Ct. at 2394-95. "Suspect" classifications are only those classifications which are likely to reflect deep seated prejudice rather than legislative rationality in pursuit of a legitimate objective. Id. at n. 14. No cases have ever held, and we decline to hold, that children are a suspect class. Furthermore, the "intermediate" scrutiny urged by the plaintiffs has only been applied to classifications based on gender, legitimacy or alienage. See, e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), reh. den., 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). We therefore engage only in rational-basis review of the Texas laws allowing for the corporal punishment of school children.
 
 
 17
 Under a rational-basis review, the court presumes state legislation to be constitutionally valid. A classification imposed by statute or law must merely be reasonable in the light of its purpose and must bear a rational relationship to the objectives of the legislation so that all similarly situated people will be treated similarly. U.S. Railroad Retirement Board v. Fritz, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368, reh'g denied, 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981). If evaluation of challenged legislation reveals any conceivable state purpose that can be considered as served by the legislation, then it must be upheld. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Lucas v. United States, 807 F.2d 414, 422 (5th Cir.1986).
 
 
 18
 As we stated in Ingraham, 525 F.2d at 916-17:
 
 
 19
 Certainly, maintenance of discipline and order in public schools is a prerequisite to establishing the most effective learning atmosphere and as such is a proper object for state and school board regulation. Without the existence of disciplinary sanctions for misbehavior, students who desire to learn would be deprived of their right to an education by the more disruptive members of their class.
 
 
 20
 We could not say then, and we cannot say now, that the Texas legislature did not have a rational basis for its legislation.
 
 
 21
 The plaintiffs argue that empirical research since Ingraham has shown that corporal punishment encourages aggressive behavior and has negative long-term effects on learning, and that this evidence refutes the rationality of using corporal punishment to achieve the goals of discipline and education. We are not persuaded by this argument, and in any event, this panel is not free to disregard our en banc opinion in Ingraham, in which this circuit expressed its unwillingness to hold that corporal punishment, as one of the means used to achieve an atmosphere that facilitates the effective transmittal of knowledge, has no real and substantial relation to the object sought. Ingraham, 525 F.2d at 916-17. The concerns voiced by the plaintiffs and the wealth of empirical research they bring to the attention of the court are more properly brought to the attention of the Texas legislature. See Baker v. Wade, 774 F.2d 1285, 1287 (5th Cir.1985).
 
 III
 
 22
 We find that the district court properly dismissed the plaintiffs' section 1983 action for failure to state a claim of deprivation of substantive due process or equal protection for which relief can be granted. Accordingly, the judgment of the district court is
 
 
 23
 AFFIRMED.