**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 99-21165

_____

NANCY MOORE and GARRY MOORE,
As Next Friends of Aaron Moore;

                Plaintiffs-Counter Defendants-Appellants,

versus

WILLIS INDEPENDENT SCHOOL DISTRICT
and ALAN BEENE,

                Defendants-Counter Plaintiffs-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

December 1, 2000

Before KING, Chief Judge, WIENER, Circuit Judge, and LYNN[*],
District Judge.

WIENER, Circuit Judge:

Plaintiffs-Appellants are the parents of Aaron Moore, a minor, (collectively, "the Moores") who, they allege, sustained serious injuries as a result of excessive exercise imposed as punishment by his middle school gym teacher. They ask us to reverse the district

---

[*] The Hon. Barbara M.G. Lynn, District Judge of the Northern District of Texas, sitting by designation.

court's summary judgment dismissal of all their claims.  We affirm the court's grant of summary judgment for the Moores' failure to state a constitutional claim of deprivation of substantive due process under the Fifth or Fourteenth Amendments to the U.S. Constitution,[1] but we reverse the district court's exercise of jurisdiction over the Moores' supplemental state-law claims and remand them to be dismissed without prejudice.

I.

FACTS AND PROCEEDINGS

Taken in the light most favorable to the Moores, the facts are as follows.  In February 1997, fourteen-year-old Aaron Moore was an eighth-grade student at Lynn Lucas Middle School in the Willis (Texas) Independent School District.  Aaron was a student athlete who had just finished the season playing on the school's basketball team and was looking forward to trying out for the track team.  He and approximately eighty other boys were enrolled in an elective gym class of which Allen[2] Beene was one of the teachers.  On the day in question, Beene observed Aaron talking to a classmate during roll call, a violation of a class rule.  As punishment, Beene told Aaron to do 100 "ups and downs," also known as squat-thrusts.[3]

_____

[1]  U.S. Const. amend. V, XIV, § 1.

[2]  Beene's first name was spelled incorrectly in the pleadings.

[3]  In an affidavit, Beene described the exercise thus:

To perform an up-down the student starts in the

Aaron had not been subjected to similar punishment before, but he understood that if he stopped during this punishment, he either would be made to start over or would be sent to the principal's office. A classmate counted the 100 repetitions.

Aaron then participated in approximately twenty to twenty-five minutes of weight lifting required of the gym class that day. He did not complain to Beene of pain or fatigue, fearing that would make matters worse. In the following days, however, Aaron was diagnosed with rhabdomyolysis[4] and renal failure; he also developed esophagitis/gastritis. Aaron was hospitalized and missed three weeks of school. He continues to experience fatigue, and has been unable to participate in school sports or physical education class.

Plaintiff-Appellant Nancy Moore, Aaron's mother, states that Beene told her the "ups and downs" were a means of punishment necessary to control middle school students. Mrs. Moore also states that Beene told her that he had intentionally inflicted pain on her son, explaining: "With high school kids you can have them

standing position, then squats until he can place his hands flat on the floor. When the hands have been placed on the floor the legs are then extended fully to the rear while the arms remain straight at the elbows with the torso elevated above the floor. The legs are then drawn back under the torso into a squatting position, and the exercise is completed by returning to a standing position.

[4] Rhabdomyolysis is a degenerative disease of the skeletal muscle that involves destruction of the muscle tissue, evidenced by the presence of myoglobin in the urine.

3

do two ups and downs and they remember the next time. With junior high kids, you have to inflict pain or they don't remember." Mrs. Moore further states that the school district's athletic director, Ron Eikenberg, told her that "the coaches at the junior high were out of control and they did their own thing."

The Moores filed suit in federal district court against the school district and Beene under 42 U.S.C. § 1983, alleging violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution; against the school district under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a claim they later non-suited); and against Beene alone for state-law claims of negligence and intentional infliction of emotional distress. The school district and Beene responded with motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56. The Moores conceded in their response to the summary judgment motion that their First Amendment claim should be dismissed, leaving only their substantive due process and state-law claims to be heard.

The matter was referred to a magistrate judge. She recommended that the defendants' motion for summary judgment be granted as to all claims after concluding that the plaintiffs could not allege a due process violation and that Beene was entitled to official immunity from the state-law claims. The magistrate judge subsequently filed a clarifying memorandum, making the same recommendation. The district court issued a final order granting

4

the motion for summary judgment, and this appeal followed.

II

ANALYSIS

A.   Summary Judgment Standard

This case is on appeal from a dismissal on summary judgment. Therefore, we review the record <u>de novo</u>, applying the same standard as the district court.[5]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[6] An issue is material if its resolution could affect the outcome of the action.[7]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[8]

The standard for summary judgment mirrors that for judgment as a matter of law.[9]  Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[10]  In reviewing all the evidence, the court must disregard

---

[5]  <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).

[6]  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[7]  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

[8]  <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 (5th Cir. 1999).

[9]  <u>Celotex</u>, 477 U.S. at 323.

[10]  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, __ U.S. __, 120 S. Ct. 2097, 2102 (2000).

all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[11]

B. Substantive Due Process

To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[12] A local government entity, such as a school district, may be held liable under § 1983 for constitutional violations committed pursuant to a governmental policy or custom.[13]

The Moores cannot meet the initial requirement for stating a § 1983 claim against either defendant because under our precedent the conduct of which they complain is not a constitutional violation.[14] We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive

---

[11] Id. at 2110.

[12] Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).

[13] Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658 (1978).

[14] See Siegert v. Gilley, 500 U.S. 226, 232 (1991) (noting that whether the plaintiff has been deprived of a right secured by the Constitution is a threshold inquiry in a § 1983 claim).

corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage. In Fee v. Herndon,[15] we reiterated that "[c]orporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'"[16] Educators in states that proscribe student mistreatment and provide a remedy "do not, by definition, act 'arbitrarily,' a necessary predicate for substantive due process relief."[17]

We do recognize a student's liberty interest in maintaining bodily integrity. For example, we found that right to have been violated by a teacher's conduct in Doe v. Taylor.[18] But Taylor is distinguishable from Aaron's case. Taylor involved the sexual molestation of a student by her teacher, acts unrelated to any legitimate state goal. In contrast, this case involves excessive exercise imposed as punishment to maintain discipline, and

---

[15] 900 F.2d 804 (5th Cir. 1990), cert. denied, 498 U.S. 908 (1990).

[16] Id. at 808 (citing Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1246 (5th Cir. 1984)).

[17] Id.

[18] 15 F.3d 443 (5th Cir. 1994) (en banc), cert. denied, 513 U.S. 815 (1994); see also Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303 (5th Cir. 1987) (finding a student's substantive due process right to be free from bodily restraint implicated by allegations that she was tied to a chair for two days as part of an instructional technique, not for punishment).

7

discipline is clearly a legitimate state goal.  It must be maintained in school classrooms and gymnasiums to create an atmosphere in which students can learn.

By now, every school teacher and coach must know that inflicting pain on a student through, <u>inter alia</u>, unreasonably excessive exercise, violates that student's constitutional right to bodily integrity by posing a risk of significant injury.  This right is not implicated, however, when, as in this case, the conduct complained of is corporal punishment – even unreasonably excessive corporal punishment – intended as a disciplinary measure.  "Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of those injuries or the sensitivity of the student, do not implicate the due process clause <u>if the forum state affords adequate post-punishment civil or criminal remedies</u> for the student to vindicate legal transgressions."[19]

If the Moores have an adequate remedy under Texas law for Aaron's alleged mistreatment, they cannot state a constitutional claim and their federal claims must be dismissed.  Accordingly, we must examine the state remedies available to the Moores and the adequacy of these remedies.

<u>C.  Availability and Adequacy of State Remedies</u>

Texas law forbids excessive corporal punishment.  Texas Penal

---

[19]  <u>Fee</u>, 900 F.2d at 808 (emphasis added).

Code § 9.62 immunizes educators against <u>criminal</u> responsibility when they use non-lethal force against students, but only if they act reasonably:

> **§ 9.62. Educator-Student**
> The use of force, but not deadly force, against a person is justified:
> (1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and
> (2) when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group.

On the civil side, Texas law provides for liability of a school employee who is negligent or uses excessive force in disciplining students when such acts result in a student's bodily injury.[20]

In <u>Cunningham v. Beavers</u>,[21] a paddling case, we concluded that Texas provides adequate traditional common-law remedies for

---

[20]  Section 22.051(a) of the Texas Education Code states:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, <u>except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students</u>. (emphasis added).

[21]  858 F.2d 269, 272 (5th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1067 (1989); <u>see also</u> <u>Fee</u>, 900 F.2d at 810 ("We hold only that since Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists.").

students who have been subjected to excessive disciplinary force. These remedies include the possibility of criminal conviction for assault[22] or injury to a child,[23] as well as potential civil recovery in tort.[24] Under our precedent, these provisions of state law bar the Moores from proving that Aaron's alleged mistreatment was arbitrary and thus preclude their prevailing on a substantive due process claim against the school district or Beene. The district court dutifully followed this precedent in dismissing the Moores' constitutional claims as do we in affirming that dismissal.

## D. Discovery

In addition to assigning error to the district court's summary judgment dismissal of their constitutional and state-law claims, the Moores complain that the trial court erred in granting summary judgment without allowing them leave to depose the defendants. We review a district court's discovery decisions for abuse of discretion and will affirm such decisions unless they are arbitrary or clearly unreasonable.[25] The Moores have not shown that the

---

[22] See Barr v. Bernhard, 562 S.W.2d 844, 849 (Tex. 1978); Harris v. State, 203 S.W. 1089 (Tex. Crim. App. 1918); Hogenson v. Williams, 542 S.W.2d 456 (Tex. Civ. App.-Texarkana, 1976).

[23] See Tex. Penal Code § 22.04, Injury to a Child, Elderly Individual, or Disabled Individual.

[24] See, e.g., Grimes v. Stringer, 957 S.W.2d 865 (Tex. App.-Tyler 1997, writ denied); Spacek v. Charles, 928 S.W.2d 88 (Tex. App.-Houston [14th Dist.] 1996, writ dismissed w.o.j.).

[25] Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1441-42 (5th Cir. 1993).

10

district court abused its discretion. The Moores' suit had been pending for fourteen months when the magistrate judge recommended that the district court grant summary judgment. The Moores make the conclusional argument that they should have been allowed to "fully explore the Defendants' conduct, policy, procedures, and intentions by taking their depositions," but do not state what relevant evidence they expected to uncover with additional discovery. There is nothing arbitrary or unreasonable about the court's ruling on this point.

III.

CONCLUSION

We affirm the dismissal of the § 1983 claims asserted against both defendants. As this leaves no remaining federal claims involved in the case, we decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(3) over the supplemental state-law claims. We therefore reverse the summary judgment of the district court adverse to the Moores on the remaining state-law claims and remand those claims to that court for dismissal without prejudice.

AFFIRMED in part, REVERSED in part, and REMANDED.

11

WIENER, Circuit Judge, Specially Concurring:

In recent years, this circuit has become increasingly isolated in our position that substantive due process cannot be implicated by injuries that students suffer incidental to disciplinary corporal punishment as long as the state affords adequate civil or criminal remedies. I now perceive our isolation to be total. Given our strict rule of stare decisis, however, this panel could not invoke that trend to change our disposition of the Moores' claims. It nevertheless seems to me that the facts surrounding Aaron's alleged injury present a proper occasion for us to re-examine our rule in light of this trend, regardless of the possibility that in the end the coach's actions and the extent and degree of Aaron's injuries might be deemed to fall short of a substantive due process violation.

When the Supreme Court affirmed Ingraham v. Wright,[1] a school paddling case and our leading corporal punishment decision, the Court ruled that subjecting students to corporal punishment without prior notice and a hearing did not violate procedural due process. The Court had limited its grant of certiorari in Ingraham, however, to two questions: whether there was a procedural due process violation and whether corporal punishment at school represented cruel and unusual punishment.[2] In so doing, the Court declined to

---

[1] 430 U.S. 651 (1977).

[2] Id. at 659.

12

review a third question that we had answered in the negative in Ingraham:  Can severe corporal punishment constitute a <u>substantive</u> due process violation?[3]

Although it focused on procedural requirements, the Court in Ingraham did hold that corporal punishment implicates Fourteenth Amendment liberty interests.[4]  The Court also observed that "there can be no deprivation of substantive rights <u>as long as disciplinary corporal punishment is within the limits of the common-law privilege</u>."[5]

The Supreme Court in Ingraham thus framed the threshold fact question whether corporal punishment may rise to a substantive due process violation:  Did the corporal punishment imposed exceed the common-law privilege historically afforded to school authorities seeking to discipline students?  I find more significant that which the Court did <u>not</u> hold:  It did <u>not</u> proclaim that an adequate remedy provided by state law or procedure constitutes a <u>per se</u> bar to a student's ability to state a substantive due process claim based on excessive corporal punishment.  This significance is heightened by the Supreme Court's subsequent writing to the effect that, unlike a procedural due process violation, a substantive due

---

[3]  <u>Id.</u> at 659 n.12, 679 n.47.

[4]  <u>Id.</u> at 674.

[5]  <u>Id.</u> at 676 (emphasis added).

13

process violation is complete when it occurs,[6] making irrelevant the availability of any post hoc state remedy.

Over the past two decades, we have established a line of panel opinions, culminating in Fee v. Herndon,[7] founded on the part of our Ingraham decision that was not reviewed by the Supreme Court. Through these holdings, we have solidly established that, when a state sets reasonable limits and provides adequate remedies, corporal punishment cannot constitute arbitrary state action and therefore cannot support a claim grounded in a violation of substantive due process. Yet, a careful reading of the cases that make up this line of decisions reveals that we have never closely examined the adequacy of those state remedies, instead simply dismissing § 1983 claims against school districts and individual defendants alike, regardless of whether they might be immune from suit. (As a matter of fact, Texas school districts generally do have state-law governmental immunity from tort claims brought by

---

[6] See, e.g., Zinermon v. Burch, 494 U.S. 113, 125 (1990) (noting that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'. . . [T]he constitutional violation actionable under § 1983 is complete when the wrongful action is taken. A plaintiff . . . may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.") (citations omitted).

[7] 900 F.2d 804 (5th Cir. 1990); see Cunningham v. Beavers, 858 F.2d 269 (5th Cir. 1988), cert. denied, 489 U.S. 1067 (1989) (construing Texas law); Woodard v. Los Fresnos Ind. Sch. Dist., 732 F.2d 1243 (5th Cir. 1984) (Texas law); Coleman v. Franklin Parish Sch. Bd., 702 F.2d 74 (5th Cir. 1983) (Louisiana law).

14

injured students.[8])

In the instant case, the district court concluded that Coach Beene was immune from tort liability under Texas's common-law official immunity.[9]  To reach that result, the court had to find that Beene acted reasonably (and thus presumably within the common-law disciplinary privilege identified by the Supreme Court in Ingraham, signifying that no constitutional violation occurred).[10] We acknowledged in Fee that, as to school corporal punishment cases in general, "under Cunningham [plaintiffs'] choice of forum may be restricted to state courts."[11]  I submit that, if all defendants in these cases prove to be immune from liability under Texas law, the question is presented whether the state really provides a remedy to injured students at all, much less an adequate one.

---

[8]  See, e.g., Barr v. Bernhard, 562 S.W.2d 844, 846 (Tex. 1978) ("The law is well settled in this state that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort."); Fee, 900 F.2d at 810 n.9 (assuming without deciding that post-punishment relief is unavailable under state law against school district, supervisor, and trustees).

[9]  Government employees are entitled to official immunity from suit arising from the performance of their discretionary duties in good faith as long as they act within the scope of their authority.  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).

[10]  We reversed that finding when we declined to exercise jurisdiction over the state-law claims.  We neither express nor imply an opinion as to the severity of Aaron's injuries, the merits of the Moores' tort claims, the reasonableness of Beene's conduct, his immunity from liability, or any other issues germane to the Moores' state-law claims.

[11]  900 F.2d at 809.

15

No other circuit has followed our lead on the issue of substantive due process in school corporal punishment cases. Relying on Ingraham and other Supreme Court decisions, the Third,[12] Fourth,[13] Sixth,[14] Eighth,[15] Tenth,[16] and — most recently — the

_____

[12]  Metzger v. Osbeck, 841 F.2d 518, 520 (3d Cir. 1988) ("A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment.").

[13]  Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980) (concluding that the "right to ultimate bodily security – the most fundamental aspect of personal privacy – is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process.  Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible. . . . [W]e simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers.").

[14]  Saylor v. Bd. of Educ. of Harlan County, Ky., 118 F.3d 507, 514 (6th Cir. 1997).

[15]  London v. Directors of DeWitt Pub. Sch., 194 F.3d 873, 876-77 (8th Cir. 1999); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560, 564 (8th Cir. 1988) (stating that "at some point the administration of corporal punishment may violate a student's liberty interest in his personal security and substantive due process rights").

[16]  Garcia v. Miera, 817 F.2d 650, 654 (10th Cir. 1987), cert. denied, 485 U.S. 959 (1988) ("Although Ingraham makes clear that ordinary corporal punishment violates no substantive due process rights of school children, by acknowledging that corporal punishment implicates a fundamental liberty interest protected by the Due Process Clause, we believe that opinion clearly signaled that, at some degree of excessiveness or cruelty, the meting out such punishment violates the substantive due process rights of the pupil.").

16

Eleventh[17] circuits have determined that excessive corporal punishment can indeed violate a student's substantive due process rights, irrespective of the availability of an adequate state law remedy. Additionally, the Ninth Circuit has held that students are protected from excessive force under either the Fourth Amendment or the Due Process Clause,[18] and the Seventh Circuit has held that unreasonable liberty restrictions or corporal punishment could violate a public school student's Fourth Amendment rights.[19]

Very recently, in <u>Neal v. Fulton County Bd. of Educ.</u>,[20] the Eleventh Circuit held that a student who was blinded in one eye when his football coach punished him for fighting by hitting him with a weight lock, stated a claim for a substantive due process violation through excessive corporal punishment. In <u>Neal</u> the Eleventh Circuit wrote that "[t]he vast majority of Circuits have concluded that substantive due process principles established by

---

[17] <u>Neal v. Fulton County Bd. of Educ.</u>, __ F.3d __, 2000 WL 1480393 (11th Cir. 2000).

[18] <u>P.B. v. Koch</u>, 96 F.3d 1298, 1303 n.4, 1304 (9th Cir. 1996) (stating that principal who physically assaulted students violated their clearly established constitutional rights, but noting that "for purposes of resolving this qualified immunity appeal, we need not and do not resolve the question of whether the Fourth Amendment, rather than the Due Process Clause, protects a student from the use of excessive force by a school official.").

[19] <u>Wallace v. Batavia Sch. Dist. 101</u>, 68 F.3d 1010, 1014-16 (7th Cir. 1995) (evaluating corporal punishment under Fourth Amendment seizure standard and rejecting plaintiff student's theory of recovery under both Fourth and Fourteenth Amendments).

[20] 2000 WL 1480393.

17

the Supreme Court protect a student from corporal punishment that is intentional, obviously excessive, and creates a foreseeable risk of serious injury."[21] The Neal court construed its binding precedent — specifically, the "old" Fifth Circuit's decision in Ingraham[22] — and concluded that this court "did not say that under no set of circumstances could corporal punishment rise to the level of a constitutional violation."[23] The Neal court went on to distinguish Ingraham by noting that, in addition to having found the concept of corporal punishment neither arbitrary nor unrelated to legitimate educational goals, the old Fifth had examined an existing school policy and declined to assess individual punishments administered under that policy.

The Eleventh Circuit concluded that the Supreme Court's decision in Ingraham "strongly suggested a favorable view" of the position that excessive corporal punishment can violate substantive due process rights.[24] Through Neal, the Eleventh Circuit "join[ed] the vast majority of Circuits in confirming that excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment as in Ingraham, may be actionable under the Due Process Clause when it is

---

[21] Id. at *1.

[22] 525 F.2d 909, 916-17 (5th Cir. 1976) (en banc).

[23] Neal, 2000 WL 1480393, at *3.

[24] Id. at *4.

18

tantamount to arbitrary, egregious, and conscience-shocking behavior."[25]

It now seems clear to me that in <u>Fee</u> we placed too much reliance on the mere existence of putative state-law remedies when we answered in the negative the question "whether the federal Constitution independently shields public school students from excessive discipline."[26] The notion that no student injury inflicted under the banner of discipline —— regardless of how shocking or severe —— can be the result of arbitrary action as long as relevant state laws are in place, flies in the face of the constitutional concept of substantive due process as viewed by at least seven other federal appellate courts that have addressed this question. Conversely, I find no other circuit in accord with our position as exemplified by <u>Fee</u>.

Reluctant as each of us is to have the federal courts become any more involved than we must in such local concerns as school discipline —— and rightly so —— I respectfully but earnestly suggest that now is the time for this court, sitting en banc, to re-examine its position. Can we be the only circuit that is "in step" and all the rest out of step? We should not demur in our own housekeeping chores and merely leave to the Supreme Court the job of eliminating the existing split between this one circuit and all

---

[25] <u>Id.</u> at *5.

[26] <u>Fee</u>, 900 F.2d at 808.

19

the rest that have announced an opposite position on the subject.